**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 3/4/96**

**TENTH CIRCUIT**

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 95-6283 |
| | ) | |
| JESSIE T. HURST, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CR-93-3-T)**

_____

Patrick M. Ryan, United States Attorney, and James F. Robinson, Assistant United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Susan M. Otto, Federal Public Defender, Oklahoma City, Oklahoma, for Defendant-Appellant.

_____

Before **BRORBY, EBEL** and **HENRY**, Circuit Judges.

_____

**BRORBY**, Circuit Judge.

_____

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The cause is therefore ordered submitted without oral argument.

Defendant Jessie Hurst plead guilty to one count of conspiracy to defraud the United States

by uttering counterfeit United States currency. 18 U.S.C. §§ 371 and 472. The district court sentenced Mr. Hurst to fifteen months imprisonment and three years supervised release. Approximately six months after he was released from prison, Mr. Hurst's probation officer filed a petition in district court alleging he had violated a condition of supervision. According to the petition,

> Hurst was arrested on October 7, 1994, by the Oklahoma City Police Department after Obtaining a Controlled Dangerous Substance by Forged Prescription from the Hometown IGA Pharmacy. The CDS was Hydrocodone, a Schedule III substance. On October 14, 1994, a charge of Obtaining a Controlled Dangerous Substance by Forged or Altered Prescription was filed against Hurst in Oklahoma County District Court in Case Number CF-94-6858. Hurst remains in custody at the Oklahoma County Jail under a $5,000 bond awaiting his next court appearance on October 21, 1994....

The petition requested that the district court issue an arrest warrant and recommended that it revoke Mr. Hurst's supervised release.

Mr. Hurst later admitted the allegations in the petition, and also that he had plead guilty to the charge set forth therein and was serving a two-year sentence in state prison. In light of these admissions, the district court found Mr. Hurst had violated paragraph 7b of the Standard Conditions of Supervision and revoked supervised release. Mr. Hurst and the government also stipulated that his state offense was a grade B violation, U.S.S.G. §7B1.1(a)(2),[1] and that in criminal history category I the recommended sentencing range was four to ten months imprisonment, U.S.S.G. §7B1.4(a), with a statutory maximum of twenty-four months, 18 U.S.C. § 3583(e)(3). The district

---

[1] All citations are to the version of the Sentencing Guidelines in effect on the date of sentencing, July 25, 1994. 18 U.S.C. §3553(a)(4); U.S.S.G. §1B1.11(a); *United States v. Owens*, 70 F.3d 1118, 1130 (10th Cir. 1995).

court accepted the stipulation at the sentencing hearing, but found the recommended range of four to ten months was "not sufficient to address the seriousness of defendant's conduct, his past actions while on pretrial release, and his violation of supervised release within six months after release from 15 months confinement in this action." The district court therefore disregarded the sentencing range recommended in U.S.S.G. §7B1.4(a) and sentenced Mr. Hurst to the statutory maximum term of twenty-four months imprisonment.

Mr. Hurst now challenges the district court's decision to impose a sentence in excess of the range recommended in U.S.S.G. §7B1.4(a). He contends the recommended sentencing range is "the Sentencing Commission's expression of controlling authority," and the district court should not exceed that range "except for extraordinarily compelling reasons, in atypical revocation cases." We disagree. In the Introduction to Chapter 7, Part A, of the Sentencing Guidelines, the Sentencing Commission states:

> Under 28 U.S.C. § 994(a)(3), the Sentencing Commission is required to issue guidelines or policy statements applicable to the revocation of probation and supervised release. At this time, the commission has chosen to promulgate policy statements only. These policy statements will provide guidance while allowing for the identification of any substantive or procedural issues that require further review. The Commission views these policy statements as evolutionary and will review relevant data and materials concerning revocation determinations under these policy statements. Revocation guidelines will be issued after federal judges, probation officers, practitioners, and others have the opportunity to evaluate and comment on these policy statements.

Section 7B1.4(a) is therefore not a sentencing guideline *per se*; it is merely a "policy statement." *United States v. Boling*, 947 F.2d 1461, 1462 (10th Cir. 1991) ("In dealing with violations of supervised release the Sentencing Commission chose to issue policy statements rather than

guidelines, in order to permit evaluation after experience with the new supervised release concept.");
*see also United States v. Headrick*, 963 F.2d 777, 782 (5th Cir. 1992) ("The Sentencing Commission, cognizant of Congress's differential treatment of guidelines and policy statements, chose to issue only 'advisory policy statements.'").  In *United States v. Lee*, 957 F.2d 770, 773 (10th Cir. 1992), we held "the policy statements regarding revocation of supervised release contained in Chapter 7 of the U.S.S.G. [including U.S.S.G. §7B1.4(a)] are advisory rather than mandatory in nature."  However, "they must be considered by the trial court in its deliberations concerning punishment for violation of conditions of supervised release."  *Lee*, 957 F.2d at 774.  If the district court imposes a sentence in excess of that recommended in Chapter 7, "we will not reverse if it can be determined from the record to have been reasoned and reasonable."  *Id.*  We later reaffirmed *Lee* in *United States v. Brooks*, 976 F.2d 1358, 1360 (10th Cir. 1992), *cert. denied*, 113 S. Ct. 2352 (1993).

Mr. Hurst acknowledges our precedents, but contends they are no longer viable in light of the Supreme Court's decisions in *Stinson v. United States*, 508 U.S. 36, 113 S. Ct. 1913 (1993), and *Williams v. United States*, 503 U.S. 193 (1992).  In *Stinson*, the Court held the commentary to the Sentencing Guidelines "that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline," *Stinson*, 113 S. Ct. at 1915, because such commentary is "akin to an agency's interpretation of its own legislative rules," *id.* at 1919.  It also stated in dictum that "[t]he principle that the Guidelines Manual is binding on federal courts applies as well to policy statements."  *Id.* at 1917.  In *Williams*, the Court held a sentencing court cannot depart downward from the applicable guideline range if there is a policy statement forbidding such a departure, because "[w]here ... a

4

policy statement prohibits a district court from taking a specified action, the statement is an authoritative guide to the meaning of the applicable guideline." *Williams*, 503 U.S. at 201.

We have never considered whether *Stinson* and *Williams* abrogate our decisions in *Lee* and *Brooks*, but our sister Circuits have. In *United States v. Mathena*, 23 F.3d 87, 93 (5th Cir. 1994), the Fifth Circuit reaffirmed the rule that the policy statements of Chapter 7 of the Sentencing Guidelines are "advisory only." It held *Stinson* is distinguishable because in that decision

> the Court drew an analogy between commentary that interprets or explains a guideline, and an agency's interpretation of its own legislative rules. Because courts usually give controlling weight to an agency's interpretation of its own legislative rules, the Court reasoned the same treatment should be accorded commentary that explains or interprets a guideline. The Court's rationale for its holding (regarding commentary) and dictum (regarding policy statements) does not apply here because the policy statements of Chapter 7 do not interpret or explain a guideline.

*Id.* at 93. Similarly, in *Headrick*, the Fifth Circuit held "[u]nlike ... *Williams*, the policy statements [in Chapter 7 of the U.S.S.G.] do not interpret or explain any statute or guideline. They stand alone, and in a state of nascency. We have no trouble, therefore, in holding that 'the policy statements regarding revocation of supervised release contained in Chapter 7 of the [Guidelines] are advisory rather than mandatory in nature.'" *Headrick*, 963 F.2d at 782 (quoting *Lee*, 957 F.2d at 773) (additional citation omitted).

All of the circuit courts that have considered the impact of *Stinson* and *Williams* have agreed with the Fifth Circuit's analysis and conclusion in *Headrick* and *Mathena*. *See United States v. Davis*, 53 F.3d 638, 640 n.6 (4th Cir. 1995); *United States v. Milano*, 32 F.3d 1499, 1502-03 (11th Cir. 1994); *United States v. Sparks*, 19 F.3d 1099, 1101 n.3 (6th Cir. 1994); *United States v.*

5

*Anderson*, 15 F.3d 278, 283-84 & n.6 (2d Cir. 1994); *United States v. O'Neil*, 11 F.3d 292, 301 n.11 (1st Cir. 1993); *United States v. Levi*, 2 F.3d 842, 845 (8th Cir. 1993); *United States v. Hooker*, 993 F.2d 898, 900-01 (D.C. Cir. 1993). The Seventh Circuit initially held to the contrary, *United States v. Lewis*, 998 F.2d 497, 499 (7th Cir. 1993), but later overruled *Lewis* and embraced the majority view. *United States v. Hill*, 48 F.3d 228, 231-32 (7th Cir. 1995). We now join our sister Circuits and reaffirm the rule we announced in *Lee* and *Brooks*.

Mr. Hurst does not seriously contend the district court's decision to impose a sentence in excess of that recommended in 7B1.4(a) was not "reasoned and reasonable," *Lee*, 957 F.2d at 774, and we see no grounds for such a contention. We therefore **AFFIRM** his sentence.