**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**APR 29 2003**

**TENTH CIRCUIT**

**PATRICK FISHER**
**Clerk**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ERNEST MOORE,

      Defendant - Appellant.

No. 01-3328
(D.C. No. 95-CR-20027-KHV)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **LUCERO** and **O'BRIEN**, Circuit Judges.

---

      Counsel for Ernest Moore filed this appeal pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), noting that there were no appealable issues of fact or law so Moore's prayer for relief was frivolous. Accordingly, counsel has moved to withdraw. Moore has requested the appointment of new counsel. The government has waived its response on appeal and has declined to address the motion to withdraw and Moore's motion for appointment of new counsel.

---

      [*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. <u>See</u> Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

The fact that Moore's counsel filed an <u>Anders</u> brief puts a special duty on us fully to examine the proceedings below, and we must carefully review the evidence presented. <u>Anders</u>, 386 U.S. at 744. We find Moore's claims frivolous and dismiss the appeal. We grant counsel's motion to withdraw and we deny Moore's request for new counsel as moot.

On appeal, Moore makes two arguments.

First, he argues that the district court inappropriately departed from a policy statement in the Sentencing Guidelines when resentencing him at a revocation hearing in October 2001. However, Moore does not contest that he committed the violations of his supervised release, nor does he assert that the sentence imposed by the district court was greater than the maximum permitted under the applicable statute. <u>See generally</u> 18 U.S.C.A. 3583(e)(3). Moreover, ranges in policy statements are merely advisory, rather than mandatory. <u>United States v. Hurst</u>, 78 F.3d 482, 483 (10th Cir. 1996). We review the record of the district court's actions to determine whether they were reasoned and reasonable. <u>Id.</u>

Second, Moore argues that he should have had the right at his October 2001 revocation hearing to call witnesses on his own behalf and to cross-examine the witness who testified against him. This argument has no merit, however, because the record shows that, when represented by counsel, Moore <u>waived</u> his right to

- 2 -

call witnesses by never requesting to do so at the hearing, and that he was able to cross-examine the single witness who testified against him. (ROA Vol. II at 14 - 18); Hawkins v. Hannigan, 185 F.3d 1146, 1154-55 & n. 5 (10th Cir. 1999) (holding that a defendant waives his right under the Confrontation Clause when neither counsel nor defendant objects during proceedings). His cross-examination argument is therefore not a basis for objection and we need not treat it further.

Procedural Background

Some background is necessary to evaluate the evidence and to provide context for Moore's first argument, especially given that we have a special duty to weigh it under Anders.

In June 1995, Moore pled guilty to federal gun and drug crimes. He was sentenced to 60 months of imprisonment and five years of supervised release. After serving the prison term, Moore was freed in January 2001 to continue on supervised release. Shortly thereafter, Moore was arrested for twice assaulting his wife, which constituted a major violation of his supervised release.

At a first revocation hearing in June 2001, the district court warned Moore that he could not continue to violate the conditions of his supervised release or he would be reincarcerated. The district court was persuaded by an appeal for clemency not to revoke Moore's supervised release entirely, but added additional

conditions to its terms. Moore had to undergo anger management counseling, to submit to six months of electronic monitoring, and to have no contact of any kind with his wife Alice.

Nonetheless, Moore violated the terms of the supervised release again almost immediately by repeatedly harassing Alice. At a second hearing in October 2001, the district court finally revoked his supervised release. It sentenced him to 36 months for the drug crimes and 24 months for the gun crime, to be served concurrently. This was the maximum left under the statute, not the suggested range for revocation of 6 to 12 months given in the policy statements.

Evidence Presented at the October 2001 Hearing

The district court revoked Moore's supervised release at the October 2001 hearing based on the evidence provided by Alice Moore that he had repeatedly contacted her and threatened her. Alice and Moore's relationship was violent and complicated. At times they were on good terms, but Moore had been arrested twice while on supervised release for assaulting, choking, and hitting Alice. Before the second of these arrests, he told her "the only way you'll leave me is if one of us leaves the earth. I'll see you in a casket." (ROA Tr. at 19.)

There were numerous examples in the record of the October 2001 hearing during which Moore was documented to have harassed Alice and then lied to his

probation officer about his actions. Two incidents in particular, though, highlight the pattern of Moore's behavior in violating the terms of his supervised release.

On August 11, 2001, Moore was suddenly out of electronic monitoring range without permission. He had come looking for Alice that morning and found her at a friend's house. Alice's written statement recorded what happened that day:

> On August 11, he was at my house at 5am mad because I was not there. He called my cell phone in an outrage. At 6:30 in the morning[,] he found where I was and he came over to my friend Diane's banging on the door. When she answered, he told her he wanted to talk to me, and she informed him that I didn't want to talk to him. He went crazy, calling my cell phone like a madman, leaving very intimidating and sometimes messages that would really have me afraid.
>
> He must have went to work because he started calling me around 7 to 8am from his work phone. He must have left for lunch because at 12:30 he was beating on the door at my girlfriend's house . . . Then he came into the liquor store where we were, and I told him that I had nothing to say to him. He then pulled off after me and chased me down the street . . . trying to make me pull over. When I wouldn't he tried to run me off the road.
>
> (ROA Tr. at 20 - 21.)

During an investigation of the August 11 incident, Moore disappeared again from electronic monitoring range. The probation officer immediately called Alice, and she confirmed that Moore had made contact with her. According to the probation officer's testimony,

She was in a panic when I talked with her, She was very upset, very scared. She was rounding her children up, getting some belongings, she was loading things into the car while she was talking to me. She did not know at first where she was going to go. We talked about that. I suggested that perhaps she go to the nearest police station if she had no other place to go.

(ROA Tr. at 13 - 14.)

Alice had promised to testify against Moore at the revocation hearing, but disappeared shortly before it started. Her written statements were entered in evidence under the hearsay rules applicable to these hearings. (Id. at 4); United States v. Waters, 158 F.3d 933 (6th Cir. 1998) (holding permissible consideration of reliable hearsay evidence in final hearings regarding revocation of supervised release).

Proceedings at the October 2001 Hearing

At the October 2001 revocation hearing, when confronted with this evidence, Moore insinuated that Alice had invented the stories to get him into trouble. Id. at 26. But the judge pressed Moore on details, asking for example whether Moore had called Alice and whether he had gone over to her house. Id. at 27. Under oath, Moore had to admit that these facts were true. Id.

The judge then expressed her disappointment with Moore's behavior. Id. Although the prosecution had identified the suggested range in the policy

statements as 6 to 12 months, the judge explained why she would depart from it. Id. She noted that this was Moore's second revocation hearing, and that he had specifically failed to abide by lesser measures of control such as electronic monitoring. Id.

After a summation of the evidence, the district court explained:

I had hoped that we wouldn't get to this stage because I thought we would be able to work with you, Mr. Moore, and that by stepping up the supervision and giving you a second chance, you would be able to show us that you were amenable to supervision. . . . [But] at this point, I'm absolutely convinced that you are not a suitable candidate for supervised release, that you do not respect the court's authority or conditions or the instructions of the probation office, and that you're not going to avoid contact with Alice Moore or comply with the conditions of your electronic monitoring.
Id. at 28.

The judge finally sentenced Moore to the statutory maximum for his crimes: 36 months for the drug crimes and 24 months for the gun crime to run concurrently. Id.

Moore's Argument on Appeal

Moore now contests his sentence and maintains that the district court should have been bound by the 6 to 12 month range in the policy statement at U.S.S.G. § 7B1.4.

The ranges in policy statements are advisory rather than mandatory, and we review cases in which district courts depart from these ranges to determine merely

whether their actions were reasoned and reasonable. United States v. Hurst, 78 F.3d 482, 483 (10th Cir. 1996). A district court must be aware of a policy statement, but it may easily depart from the range the statement suggests. United States v. Lee, 957 F.2d 770, 775 (10th Cir. 1992).

We decided a similar case to Moore's in United States v. Lee, 957 F.2d 770 (10th Cir. 1992). Lee had been convicted of unlawful possession of a firearm and, as a condition of supervised release, was ordered not to use drugs. He repeatedly, however, tested positive for methamphetamine. We upheld that district court's departure from the range in the policy statements when it recognized what the range was, but departed from it after explaining that the trust of the court had been violated by Lee's repeated abuse of drugs. Id. at 772.

In Moore's case, the record also demonstrates that the district court's departure from the policy statement meets our low standard of review. Hurst, 78 F.3d at 483; Anders, 386 U.S. at 744. The district court confirmed on the record that it recognized what the policy statement range was for Moore's violations. (ROA Tr. at 22 - 23.) The judge then identified what the statutory maximum was and conferred with both sides about whether she should impose that range. Id. at 23. She specifically gave Moore's attorney an opportunity to argue for a lesser sentence, and requested a response from Moore himself in which he was later forced to admit that he gave inconsistent answers to the court. Id. at 25.

Moore expressly disregarded the requirements of his supervised release, violating those conditions numerous times despite warnings from the court and his probation officer. He showed no genuine remorse for his actions at the hearing and admitted under questioning that he had lied to the court. As the district court explained, it was these elements of Moore's own behavior that resulted in its departure from the range in the policy statement.

Conclusion

Accordingly, we conclude that the district court's actions in departing from the range in the policy statements were reasoned and reasonable given its explanation of its actions and Moore's continuing disregard for the conditions of his supervised release. We earlier found that Moore's argument regarding cross-examination was without merit. We therefore DISMISS Moore's appeal as frivolous under <u>Anders</u> and GRANT counsel's motion to withdraw. <u>Anders</u>, 386 U.S. at 744. Moore's request for the appointment of new counsel is DENIED as moot.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge