**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 2 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

VERNON TSOSIE,

      Defendant-Appellant.

No. 03-2209

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-02-1885-WJ)**

---

Norman Cairns, Assistant United States Attorney, (David C. Iglesias, United States Attorney with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

Stephen P. McCue, Federal Public Defender, (Roger A. Finzel, Assistant Federal Public Defender with him on the briefs), Albuquerque, New Mexico, for Defendant-Appellant.

---

Before **SEYMOUR, LUCERO** and **O'BRIEN**, Circuit Judges.

---

**SEYMOUR,** Circuit Judge.

---

Vernon Tsosie challenges the district court's decision to revoke his term of supervised release and require him instead to serve eighteen months in prison for the remainder of an enlarged supervised release term. He claims the district court erroneously based the length of his prison sentence solely on his need for rehabilitation and that the sentence was neither reasoned nor reasonable. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I

Mr. Tsosie had been drinking on the morning of December 16, 1998, when he stabbed two men at a party on the Fort Hall Indian Reservation in Idaho. He pled guilty to two Class C felony counts of assault resulting in serious bodily injury and was sentenced to forty-two months imprisonment followed by three years of supervised release.[1] Among the conditions of Mr. Tsosie's supervised release was that he refrain from using illegal drugs, he refrain from excessive use of alcohol, and that he not commit any federal, state or local crime. Mr. Tsosie's supervised release began in Idaho on May 1, 2002, and his case was transferred to the district court in New Mexico on October 23, 2002. He violated the conditions

---

[1]A Class C felony is one in which the statutory maximum sentence is less than twenty-five years but more than ten years. 18 U.S.C. § 3559(a)(3). Mr. Tsosie was charged and pled guilty, in part, to 18 U.S.C. § 113(a)(6), which calls for a fine or imprisonment up to ten years, or both. 18 U.S.C. § 113(a)(6).

of his release on April 19, 2003, when he was arrested for fighting with his wife after drinking alcohol, and again on April 27, 2003, when he was arrested for aggravated driving under the influence of alcohol. The probation office filed a petition to revoke Mr. Tsosie's supervised release. Following his arrest on the revocation petition, Mr. Tsosie was released to a halfway house but absconded from the facility shortly thereafter. Eventually, he turned himself in.

At the initial revocation hearing, in consideration of Mr. Tsosie's admitted serious substance abuse problem, the district court stated it was contemplating sentencing him above the three- to nine-month range indicated by the United States Sentencing Guidelines to allow him to participate in the Bureau of Prisons' 500-hour substance abuse treatment program. *See* U.S. SENTENCING GUIDELINES MANUAL §§ 7B1.1(a)(3) and 7B1.4(a). Mr. Tsosie objected and requested a continuance so he could respond to the district court's concerns in writing. In his subsequent Sentencing Memorandum, Mr. Tsosie maintained he would not participate in the 500-hour voluntary program but would participate in a thirty-day in-patient treatment program. When the revocation hearing reconvened, Mr. Tsosie admitted to the violations of his supervised release but reiterated he would not participate in the voluntary treatment program offered by the Bureau of Prisons.

The district court found Mr. Tsosie had a severe alcohol problem that

endangered him and the public and further found a thirty-day treatment program insufficient to deal with his problem. The court sentenced him to eighteen months in prison with a strong recommendation he be enrolled in the Bureau of Prisons' treatment program. Mr. Tsosie again objected, pointing to the fact the program was strictly voluntary and he would not participate. The court noted his objections for the record but affirmed the sentence "notwithstanding the defendant's stated intentions." Rec., vol. IV, Tr. of Proceedings 8/25/03, at 15.

## II

Mr. Tsosie raises two issues on appeal. He maintains the district court erred when it lengthened his sentence for the sole purpose of rehabilitation and asserts his sentence is neither reasoned nor reasonable. We will address the rehabilitation issue before turning to the validity of the sentence.

### A.     *Rehabilitation as factor relevant to requiring defendant to serve time in prison upon revocation of supervised release*

Mr. Tsosie failed to raise the rehabilitation issue below. Generally, such failure results in a review for plain error only. *See United States v. Tisdale,* 248 F.3d 964, 975 (10th Cir. 2001) (failure to lodge specific objection to district court's legal interpretation or application of sentencing guidelines precludes appellate review, except for plain error), *cert. denied,* 534 U.S. 1153 (2002).

However, we recently recognized an exception to this general rule.

> [W]hen the district court *sua sponte* raises and explicitly resolves an issue of law on the merits, the appellant may challenge that ruling on appeal on the ground addressed by the district court even if he failed to raise the issue in district court. In such a case, review on appeal is not for "plain error," but is subject to the same standard of appellate review that would be applicable if the appellant had properly raised the issue.

*United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1328 (10th Cir. 2003).

Mr. Tsosie argues the district court questioned whether it could enlarge his sentence solely for the purpose of rehabilitation *sua sponte* and decided the question explicitly on the merits. The district court premised its sentencing decision with the statement:

> In the United States versus Brown, 224 F.3d 1237, an Eleventh Circuit opinion at Pages 1239 to 1240, the court affirmed the maximum sentence of two years for rehabilitation purposes where the guideline maximum was 11 months. The court held that, "A court may consider a defendant's rehabilitative needs when imposing a specific incarceration term following revocation of supervised release."

Rec., vol. IV, Tr. of Proceedings 08/25/03, at 10. We agree the district court directly decided this issue of law. Thus, we review *de novo* the district court's decision to impose an enlarged sentence on Mr. Tsosie upon revocation of his supervised release for the sole purpose of his rehabilitation.

Mr. Tsosie contends 28 U.S.C. § 994(k) and 18 U.S.C. § 3582(a) prohibit the promotion of rehabilitation as a significant factor when a court determines the

length of a prison sentence after revocation of supervised release. 28 U.S.C. § 994(k) instructs the Sentencing Commission to "insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment." 28 U.S.C. § 994(k). Likewise, 18 U.S.C. § 3582, in addressing "factors to be considered in imposing a term of imprisonment," states in relevant part:

> The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

18 U.S.C. § 3582(a). Although our court has not yet had reason to comment on the specific import of this language, the other circuits have recognized its clear mandate—when imposing an original sentence to a term of imprisonment, it is inappropriate for the district court to consider rehabilitation of the defendant as the sole purpose for imprisonment. *See United States v. Brown*, 224 F.3d 1237, 1240 (11th Cir. 2000); *United States v. Jackson*, 70 F.3d 874, 879 (6th Cir. 1995).

Other circuits have also uniformly ruled, however, that district courts *may* give weight to a defendant's rehabilitative needs when revoking a term of supervised release and then subsequently requiring a defendant to serve part or all of his new and potentially extended term of supervised release in prison. *See*

*Brown*, 224 F.3d at 1242 (affirming imprisonment upon revocation of supervised release to allow defendant to complete a comprehensive substance abuse treatment); *United States v. Thornell*, 128 F.3d 687, 688 (8th Cir. 1997) (affirming district court's consideration of defendant's rehabilitative needs when imposing imprisonment in excess of sentencing guidelines policy statement range after revocation of supervised release); *Jackson*, 70 F.3d at 879-80 (affirming district court's consideration of defendant's rehabilitative needs after mandatory revocation of supervised release); *United States v. Giddings*, 37 F.3d 1091, 1094-95, 1097 (5th Cir. 1994) (same); *United States v. Anderson*, 15 F.3d 278, 282-83 (2d Cir. 1994) (affirming district court's consideration of defendant's correctional needs when imposing sentence of imprisonment after revoking supervised release).

The distinction made between the factors appropriate for determining an initial term of imprisonment and those appropriate for sentencing upon revocation of supervised release is based on the statutes specifically relevant to supervised release. In the original sentencing process, the district court contemplates both the term of imprisonment and the following period, if any, of supervised release. But the initial term of imprisonment is always limited by 18 U.S.C. § 3582(a) and 28 U.S.C. § 994(k). Conversely, when determining the imposition and length of supervised release, a court is required pursuant to 18 U.S.C. § 3583(c), to look to

the factors in various subsections of 18 U.S.C. § 3553(a), including "the need for the sentence [of supervised release] imposed . . . to provide the defendant with needed . . . medical care, or other correctional treatment in the most effective manner . . . ."  18 U.S.C. § 3553(a)(2)(D).

When a defendant violates the conditions of supervised release under circumstances allowing the court discretionary revocation of that release, § 3583(e) affords the court several alternatives.  No matter which alternative is chosen, the statute requires the court to consider the § 3553(a) factors before deciding an appropriate course of action with regard to a particular defendant.[2] After considering the § 3553(a) factors, the district court may terminate or extend the term of supervised release under certain conditions.  *See* 18 U.S.C. § 3583(e)(1), (2).  The court may also choose to:

> revoke a term of supervised release, and *require the defendant to serve in prison all or part of the term of supervised release* authorized by statute for the offense that resulted in such term of supervised release . . . except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation . . . more than 2 years in prison if such offense is a class C or D felony . . . .

18 U.S.C. § 3583(e)(3) (emphasis added).

Our reading of the various statutes in question leads us to conclude

---

[2]Mandatory revocation, governed by § 3583(g) and requiring imprisonment upon revocation, does not expressly require consideration of the § 3553(a) factors, but neither does it prohibit the sentencing court from doing so.

Congress intended the limitations imposed by 18 U.S.C. § 3582(a) and 28 U.S.C. § 994(k) to apply only when a court is initially "imposing a sentence to a term of imprisonment" for the crime committed. Section 3582(a) of title eighteen, and § 994(k) of title twenty-eight clarify that it is inappropriate to impose a sentence to a *term of imprisonment* solely for rehabilitative purposes or correctional treatment. However, the same cautionary tone is not present in the statute governing supervised release or the revocation thereof. In § 3583(c), Congress identified the factors, including medical and correctional treatment, that a court should consider when setting a "term of supervised release," § 3583(c), and when terminating, extending or revoking a "term of supervised release," § 3583(e)(1), (2), (3). In the instance of revocation, Congress used the phrase "require the defendant to serve in prison all or part of the *term of supervised release*," § 3583(e)(3), rather than the phrase "impose a *term of imprisonment*," § 3582(a). *Cf.* § 994(k) ("The Commission shall insure the guidelines reflect the inappropriateness of imposing a sentence to a *term of imprisonment* for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.") (emphasis added). The difference in language between 18 U.S.C. § 3583(c), (e) ("term of supervised release") and 18 U.S.C. § 3582(a) and 28 U.S.C. § 994(k) ("term of imprisonment")  reinforces the argument that Congress did not intend

the limitations applicable to an initial sentence of imprisonment to be applicable in redetermining a sentence of supervised release to include prison time upon the revocation of the prior term of supervised release.[3]

The rationale for allowing courts to consider rehabilitation when

[3]As the dissent notes, Congress used the phrase "term of imprisonment" in § 3583(h) instead of "serve in prison all or part of a term of supervised release," which it utilized in § 3583(e)(3). Dissent at 7. This inconsistency, while unfortunate, is not fatal to our conclusion because both subsections can be read in conjunction with one another so as not to render either superfluous. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (quotations and citation omitted). As we read subsection (h), after the court revokes a defendant's supervised release and then requires him pursuant to subsection (e)(3) "to serve in prison . . . part of the term of supervised release authorized by statute . . . without credit for time previously served on post-release supervision", the court may require the defendant to serve the rest of this new term of supervised release upon release from prison. If, after revocation, the court requires the defendant to serve in prison all, rather than part, of the new term of supervised release, subsection (h) is not implicated because any supervised release following revocation cannot exceed the duration of the original term of supervised release. The only way to read subsections (e)(3) and (h) together is that the time in prison post release is time that is part of a new "term of supervised release."

We find it noteworthy that the dissent accuses us of "judicial revision" while making an argument that revises Congress's language. Dissent at 9. Substituting its own phrase ("two year term") for the phrase Congress actually used in § 3583(e)(3) ("require the defendant to serve in prison all or part of the term of supervised release"), the dissent judicially revises the statute so it is "incapable of supporting [our] anomalous interpretation." *Id.* at 6. Likewise, we could make our argument stronger by judicially revising subsection (h) so it contained the language of subsection (e)(3). These potential revisions, however, are not the law and we are not Congress. Therefore, rather than judicially revising the statutes to suit our position, we believe the best course is to interpret them in a manner giving meaning to each while eclipsing none.

incarcerating a defendant upon violation of the conditions of his supervised

release is "especially compelling," *Giddings*, 37 F.3d at 1096, because the judge

is merely altering the location of the defendant's supervised release from outside

prison to inside prison.

> When revoking supervised release the district judge is not resentencing the defendant. The type and the term of the sentence has already been determined by the sentencing judge. The supervising district judge is bound by the sentence previously imposed, and at revocation is merely converting all or a portion of the supervised release period into a term of imprisonment. Given the limited discretion available to the supervising district judge, and the fact that the sentencing range is fixed by statute, consideration of the § 3553(a) factors may be appropriate to fashion a sentence conforming to the purpose and intent of the original sentence, and that is within the boundaries established by the sentencing judge.

*Id.* Because the court is not *imposing* a "term of imprisonment" after revocation,

but rather *converting* a term of supervised release, the court is merely requiring

the defendant "to serve in prison all or part of the term of supervised release" as

contemplated by the plain language of § 3583(e)(3).

> Because [medical and correctional needs] may be considered in determining the length of the period of supervised release and because a district court may require a person to serve in prison the period of supervised release, the statute contemplates that the medical and correctional needs of the offender will bear on the length of time an offender serves in prison following revocation of supervised release.

*Anderson*, 15 F.3d at 282 (citation omitted).

The legislative history for § 3583 makes clear that the terms of a

defendant's supervised release should be considered separately from those of his

term of imprisonment and requires a court's consideration of rehabilitation factors. The history explicitly states that "[t]he term of supervised release would be a separate part of the defendant's sentence, rather than being the end of the term of imprisonment." S. REP. NO. 225, 98th Cong., 2d Sess. 119 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3306. It goes on to note that

> [s]ubsection (c) [of 18 U.S.C. § 3583] specifies the factors that the judge is required to consider in determining whether to include a term of supervised release as a part of the defendant's sentence, and, if a term of supervised release is included, the length of the term. The judge is required to consider the history and characteristics of the defendant, the nature and circumstances of the offense, the need for the sentence to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

*Id.* at 3307. By logical extension, post-revocation supervised release served within a prison should not trigger the limiting language of 18 U.S.C. § 3582(a) and 28 U.S.C. 994(k) because the defendant is not being sentenced to a term of imprisonment for the original crime. Instead, he is serving his term of supervised release in prison because he failed to abide by the conditions for serving supervised release outside of prison.[4]

---

[4]Our interpretation does not undermine 28 U.S.C. § 994(k) because that section retains its full force in the context of a court imposing an original sentence to a term of imprisonment. As the Second Circuit has noted,

> the same reasons that render 18 U.S.C. § 3582 inapplicable, render 28 U.S.C. § 994(k) inapplicable to a court requiring an offender to serve time in prison following the revocation of supervised release: (1) 18 U.S.C. § 3583 does not explicitly refer to any such limitation; (2) 18 U.S.C. § 3583

In reaching this conclusion, we are also guided by the traditional canon of statutory construction that courts should avoid statutory interpretations which render provisions superfluous. *See, e.g.*, *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (quotations and citation omitted). Were we to adopt Mr. Tsosie's approach, those portions of 18 U.S.C. § 3583(e) referring to 18 U.S.C. § 3553(a)(2)(D), would be rendered superfluous.

In sum, we hold that Congress intended a district court to consider the medical and correctional needs of an offender in determining how much time that offender should be required to serve in prison after it becomes clear he will not abide by the conditions of his supervised release if he is not confined. Here, the district court found Mr. Tsosie had violated the conditions of his supervised release, considered the relevant factors, including the need for the sentence to

---

does explicitly refer to factors including the offender's medical and correctional needs; (3) 18 U.S.C. § 3583 avoids language similar to the "imposition of a sentence of imprisonment" language of 28 U.S.C. § 994(k); (4) 18 U.S.C. § 3583 expressly contemplates requiring an offender to serve time in prison equal to his or her period of supervised release, and a court may consider the medical and correctional needs of an offender in determining the length of the period of supervised release. *United States v. Anderson*, 15 F.3d 278, 283 (2d Cir. 1994).

-13-

"provide the defendant with needed . . . medical care, or other correctional treatment in the most effective manner," *see* 18 U.S.C. § 3553(a)(2)(D), revoked the initial term of supervised release, and required Mr. Tsosie to "serve in prison . . . part of the [new] term of supervised release." 18 U.S.C. § 3583(e)(3). The court's actions were in accord with § 3583(e). Likewise, because Mr. Tsosie's sentence did not exceed the two-year statutory maximum for a Class C felony, *see id.*, the court's sentencing determination was not erroneous. .

### B.      *Reasonableness of sentence*

We turn to the separate question of the reasonableness of the court's decision to extend Mr. Tsosie's time in prison after revocation to provide him the opportunity to participate in a voluntary program in which Mr. Tsosie claimed he would not participate. We review *de novo* legal questions regarding the application of the sentencing guidelines. *See United States v. Brown*, 314 F.3d 1216, 1222 (10th Cir. 2003). We review the district court's factual findings for clear error, "giving due deference to the district court's application of the guidelines to the facts." *Id.*

The range of imprisonment applicable upon revocation is set forth at section 7B1.4(a) of the sentencing guidelines. We have held that section 7B1.4 is not a sentencing guideline *per se* but merely a "policy statement." *See, e.g., United States v. Hurst*, 78 F.3d 482, 483 (10th Cir. 1996) (citing *United States v.*

*Boling*, 947 F.2d 1461, 1462 (10th Cir. 1991) ("In dealing with violations of supervised release the Sentencing Commission chose to issue policy statements rather than guidelines, in order to permit evaluation after experience with the new supervised release concept.")); *see also United States v. Headrick*, 963 F.2d 777, 782 (5th Cir. 1992) ("The Sentencing Commission, cognizant of Congress's differential treatment of guidelines and policy statements, chose to issue only 'advisory policy statements . . . .'"). Although the policy statements regarding revocation of supervised release are advisory rather than mandatory in nature, they must be "considered by the trial court in its deliberations concerning punishment for violation of conditions of supervised release." *United States v. Lee*, 957 F.2d 770, 774 (10th Cir. 1992). If the district court imposes a sentence in excess of that recommended in Chapter 7, "we will not reverse if it can be determined from the record to have been reasoned and reasonable." *Id. See also Hurst*, 78 F.3d at 483. The district court sentenced Mr. Tsosie to serve eighteen months in prison, a duration shorter than the two-year statutory maximum set out in § 3583(e)(3) for a Class C felony, but longer than the three- to nine-month range suggested in guideline section 7B1.4.

There can be no real dispute that the district court's decision was reasoned. The court articulated its legal justification for departing from section 7B1.4 by citing *Brown* and *Thornell*, *see* Rec., vol. IV, Tr. of Proceedings 08/25/03, at 10,

as well as by specifically stating that the section 7B1.4 range was three to nine months and was merely advisory. *Id.* at 12. The court gave specific reasons for exceeding the range, including the severity of Mr. Tsosie's alcohol problem, the danger he would pose to himself and society if he continued to drink and drive, the likely ineffectiveness of a thirty-day alcohol treatment program, the fact that he had repeatedly violated the conditions of his supervised release, prior leniency he had received from the courts, his failure to participate in counseling or take advantage of placement at a halfway house, his continued association with other felons, and his unresponsiveness to community supervision efforts. *Id.* at 10-13. The court then made a "strong[] recommend[ation]" that he be enrolled in the voluntary 500-hour drug program because of Mr. Tsosie's "clear need" of such extensive services. *Id.* at 13-14.

Mr. Tsosie argues the district court's decision was plainly unreasonable because Mr. Tsosie had adamantly stated his intention not to participate in the voluntary 500-hour rehabilitation program. We are not persuaded. Courts have consistently upheld the reasonableness of decisions based on reasons similar to those articulated by the district court here. *See Brown*, 224 F.3d at 1242, 1243 (finding imposition of two-year sentence not abuse of court's discretion because defendant "seriously needed the comprehensive [drug abuse treatment program]" and "[a] longer prison term would probably enable [defendant] to obtain

necessary drug rehabilitation without posing a danger to himself or society"); *Thornell*, 128 F.3d at 688 (upholding a fourteen-month sentence as "judicious and carefully tailored to the needs of this particular case and this particular offender" when based on unlikelihood defendant would receive treatment she needed at half-way house and fact that her best chance of retaining parental rights and being reunited with her children was through participating in a 500-hour drug treatment program); *Jackson*, 70 F.3d at 879 (upholding reasonableness of sixteen-month imprisonment term based on "the need to protect the public from further crimes of the defendant, the need to protect defendant from himself, and the need to facilitate defendant's participation in an intensive drug rehabilitation program" in light of defendant's past violations of supervised release, continuing drug use, crimes against property, and apparent drug addiction, while noting it was "likely that a longer term of imprisonment will insure that defendant has the opportunity to receive intensive drug rehabilitation while not posing a threat to himself or the public"); *Giddings*, 37 F.3d at 1094 n.7, 1097 (upholding two-year sentence imposed on basis that drug rehabilitation program would be more readily available with a longer sentence); *Anderson*, 15 F.3d at 284 (upholding seventeen-month sentence because court considered § 3553 factors and made findings that defendant failed to adjust to supervision, failed to fulfill her probation obligations and needed "intensive substance abuse and psychological treatment in a structured

-17-

environment"). While Mr. Tsosie cannot be forced to participate in the drug rehabilitation program offered in prison, that does not make it unreasonable for the district court to determine that Mr. Tsosie is more likely to successfully address his alcoholism in a prison setting given his failure to address it outside of prison.

Accordingly, we **AFFIRM.**

*U.S. v. Tsosie*, No. 03-2209
O'Brien, Circuit Judge, dissenting.


Aggravated facts (recited in the majority opinion) cry out for revocation of

Tsosie's supervised release.  His recalcitrant behavior, along with all it portends,

fully justifies ignoring policy guidance, which suggests re-incarceration for a term

between three and nine months.  USSG § 7B1.4(a).  On these facts imprisonment

for eighteen months is well within elastic limits.[1]  However, the enlarged term of

imprisonment was imposed, **not** because of Tsosie's flagrant and repeated

disregard of the terms of supervised release, but, in the judge's words, "**only**"

because of his need for intensive (long term) alcohol treatment.  That approach is

not lawful.  Accordingly, but with utmost respect for my colleagues, I dissent.

In the "evolving"[2] area of supervised release the guidelines provide "policy

statements only."  USSG, Ch.7, Pt.A(1). They are not binding on a district judge,

whose decision we accord great deference, requiring, quite generally, that it be

"reasoned and reasonable," *United States v. White,* 244 F.3d 1199, 1204 (10th

Cir. 2001).  It must also be lawful.  18 U.S.C. § 3742(e).  To my lights the

statutes and guidelines clearly prohibit an enlargement of a term of imprisonment

merely to accommodate a defendant's need for rehabilitation.

Congressional intent is more than evident; it is nearly palpable.  In

---

[1] "In the case of a Grade C violation that is associated with a high risk of new felonious conduct . . . an upward departure may be warranted."  USSG § 7B1.4, comment. (n.3).

[2] Now in the second decade of study.

-1-

addressing a sentence of imprisonment, 18 U.S.C. § 3582(a) states in relevant part:

> The court, in determining whether to impose a term of imprisonment, and, *if a term of imprisonment is to be imposed*, *in determining the length of the term*, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.*

(Emphasis added.) 28 U.S.C. § 994(k) continues the theme by instructing the United States Sentencing Commission to "insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment." Even a tin ear can discern the *leitmotif*—defendant rehabilitation, treatment or care cannot drive the incarceration decision either at the threshold or as to length.

The majority acknowledges the statutory limit on judicial discretion when an original sentence of imprisonment is imposed. Majority Op. at 6. *See also, e.g., United States v. Brown*, 224 F.3d 1237, 1240 (11th Cir. 2000); *United States v. Jackson*, 70 F.3d 874, 879 (6th Cir. 1995). But, for reasons I cannot follow or fathom, it abandons this acknowledged limit for revocations of supervised release. In doing so it ignores overarching congressional policy, forcefully and repeatedly stated.[3]

_____

[3] The majority approach is not unlike that of *United States v. Giddings*, 37 F.3d 1091 (5th Cir. 1994), upon which it relies and quotes. Majority Op. at 7, 10, 11, 12 & 17. That court said: "The legislative history of the Comprehensive

The tipping point is whether incarceration is appropriate, not when it is ordered. In authorizing, sometimes requiring, supervised release after imprisonment, 18 U.S.C. § 3583(c) instructs the sentencing judge to consider 18 U.S.C. § 3553(a) factors. Among those factors is "the need for the sentence

Crime Control Act of 1984 also indicates that the prohibition against considering rehabilitative needs relates to the decision of *whether to impose* imprisonment, not to the *length of the term* of imprisonment. [FN 17]." *Giddings*, 37 F.3d at 1096. The *Giddings* court was simply wrong in its analysis of legislative history and the impact of that history on the relevant statutes. The full text of footnote 17, as quoted in *Giddings*, follows:

> *See* S.Rep. No. 225, 98th Cong., 2d Sess. 119 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3302, Subsection (a) specifies, in light of current knowledge, that the judge should recognize, *in determining whether to impose a term of imprisonment,* "that imprisonment is not an appropriate means of promoting correction and rehabilitation." This caution concerning the use of rehabilitation as a factor to be considered in imposing sentence is to discourage the *employment of a term of imprisonment* on the sole ground that a prison has a program that might be of benefit to the prisoner. This does not mean, of course, that *if a defendant is to be sentenced to imprisonment for other purposes,* the availability of rehabilitative programs should not be an appropriate consideration, for example, in recommending a particular facility. ([E]mphasis supplied.)

The *Giddings* court erred in two respects. First, legislative history cannot change the plain language of a statute and 18 U.S.C. § 3582(a) speaks not only to the decision to impose incarceration but also to the length of any incarceration imposed. It requires, in either instance, that the sentencing judge recognize "that imprisonment is not an appropriate means of promoting correction and rehabilitation." Second, the court mis-read the language it quotes in footnote 17. The legislative history merely provides that after the incarceration decision is made (and any decision to incarcerate would necessarily include a term) rehabilitative factors can be considered "for example, in recommending a particular facility." A post-sentencing facility recommendation hardly equates with a determination of the length of the sentence, particularly so in light of clear and contrary statutory language.

imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." 18 U.S.C. § 3553 (a)(2)(D). But supervised release is not, by definition or in effect, incarceration; *a fortiori*, the incarceration limits of 18 U.S.C. § 3582(a) and 28 U.S.C. § 994(k) are not implicated. But those limits may be implicated when a defendant fails to take advantage of the rehabilitative features of supervised release.

A decision to terminate, modify, extend, or revoke supervised release is also tempered by a consideration of some of the § 3553(a) sentencing factors, but in a much more structured manner than the majority suggests. 18 U.S.C. § 3583(e) provides: **"Modification of conditions or revocation**. – The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), . . ." address supervised release. Depending upon circumstances it can: (1) terminate supervised release, (2) extend the term of supervised release, (3) revoke a term of supervised release, or (4) impose house arrest and require electronic monitoring. 18 U.S.C. §§ 3583(e)(1)-(4). The court must consider the enumerated § 3553(a) factors before, and as a guide to, choosing among the four possible consequences, three of which do not involve incarceration. The tipping point does not change; it remains a choice between incarceration (punishment model) and some kind of release (rehabilitation model).

If, in spite of a defendant's failure to avail himself of the benefits of

supervised release, facts suggest a rehabilitation model is still appropriate, one of the sentencing options not involving incarceration would be the choice. On the other hand, if re-incarceration is necessary, the strictures of 18 U.S.C. § 3582(a) and 28 U.S.C. § 994(k) apply—the availability of prison programs cannot drive the decision to incarcerate or its length.

I see nothing in any of the statutes even remotely suggesting that the incarceration limits contained in § 3582 and § 994 are not global in application. More specifically, there is nothing in the structure or text of 18 U.S.C. § 3583, or in logic, to suggest revocations of supervised release are somehow exempt from those global restrictions. The majority opinion does not square the box.

It tells us: "The rationale for allowing courts to consider rehabilitation when incarcerating a defendant upon violation of the conditions of his supervised release is 'especially compelling,' *Giddings*, 37 F.3d at 1096, because the judge is merely altering the location of the defendant's supervised release from outside prison to inside prison." Majority Op. at 10-11. Relating and explaining that rationale to a client could be a challenge for defense counsel. The conversation might go something like this: "There is good news; your supervised release has been continued. But there is bad news; you will be serving your supervised release in prison." In puzzling over the logic, a defendant might well ask what kind of device one must look through to conclude that a supervised *release* must

be served behind prison walls.[4]  The logical disconnect is repeated at Page 12 of the Majority Opinion:  "he is serving his term of supervised release in prison because he failed to abide by the conditions for serving supervised release outside of prison."  Contrary to the majority's holding—that supervised release is the same whether served inside or outside prison walls—a revocation of supervised release, perhaps resulting in months or years behind bars, is a sentence of imprisonment.   Logic compels.  So do the statutes, fairly read.

Clumsy statutory language may contribute to the problem, but it is exacerbated by the majority's selective emphasis.  Indeed, as the majority notes, 18 U.S.C. § 3583(e)(3) permits the court to:

> [r]evoke a term of supervised release, and *require the defendant to serve in prison all or part of the term of supervised release* authorized by statute for the offense that resulted in such term of supervised release . . . except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation . . . more than 2 years in prison if such offense is a class C or D felony . . . .

Majority Op. at 8 (emphasis in Majority Opinion).  The operative phrase is "the term of supervised release *authorized by statute for the offense that resulted in such term of supervised release*" (emphasis supplied), not the subset of those words emphasized by the majority.  Read in context the phrase, while cumbersome, simply means the maximum amount of time a defendant could be placed on supervised release—in this case a two-year term because the offense

---

[4] "Would you tell me, please," said Alice, "what that means?"  Lewis Carroll, *Through the Looking Glass*, 186 (Penguin Books 1998).

that originally resulted in his supervised release was a Class C felony. 18 U.S.C. § 3583(e)(3). Substituting "a two-year term" for the arcane language of the statute does not change its meaning, but makes it easier to read and demonstrates that it is incapable of supporting the anomalous interpretation forced by the majority's reading. It would permit the court to:

> [r]evoke a term of supervised release, and require the defendant to serve in prison all or part of [a two-year term] without credit for time previously served on postrelease supervision, if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . .

18 U.S.C. § 3583(e)(3). And there is more. Subsection (h) of the statute refers to the revocation of supervisory release language of subsection (e) [quoted above], calling it a "term of imprisonment," not a means of "serving his term of supervised release in prison."

> When a term of supervised release is revoked and *the defendant is required to serve a term of imprisonment*, the court may include a requirement that the defendant be placed on a term of supervised release *after imprisonment*. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, *less any term of imprisonment that was imposed upon revocation of supervised release*.

18 U.S.C. § 3583(h) (emphasis added). When his supervised release was—quite properly—terminated, Tsosie was subjected to a "term of imprisonment" and that "term of imprisonment" was extended solely for alcohol treatment. The sentence was contrary to law. 18 U.S.C. § 3582(a); 28 U.S.C. § 994(k).

-7-

The sentence imposed not only ignored the statutes, but the policy statements of the sentencing guidelines as well. The United States Sentencing Commission deliberately chose to treat a violation resulting from a defendant's failure to follow the court-imposed conditions of probation or supervised release as a separate wrong—"a breach of trust." USSG Ch. 7, Pt.A(3)(b). "[T]he sentence imposed upon revocation [is] intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision, leaving the punishment for any new criminal conduct to the court responsible for imposing the sentence for that offense." *Id*. The purpose of a sentence of imprisonment imposed upon the revocation of supervised release is no different than the purpose of imprisonment imposed by an original sentence—to punish inappropriate behavior. The court is not "converting" the location of a term of supervised release (Majority Op. At 11), it is *revoking* supervised release and *"impos[ing] a term of imprisonment"* for breach of trust. USSG Ch. 7, Pt. A(2)(b) (emphasis added).

The different purposes served by imprisonment and supervised release are also relevant to the analysis.[5] "[I]mprisonment is not an appropriate means of

_____

[5] Policy Statement § 7B1.4 instructs on an imprisonment after revocation. Application Notes 2 and 3 of the Commentary are the only provisions to address circumstances where a departure may be appropriate. Neither provision refers to rehabilitation as a basis for the enlargement of a sentence of imprisonment upon revocation. Although the policy statement is advisory rather than mandatory, the

promoting correction or rehabilitation." 18 U.S.C. § 3582(a). On the other hand, as the Supreme Court has noted, "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Each aspect of a sentence—imprisonment, probation, supervised release, restitution, fine—serves a distinct purpose. This is not to say there can be no overlap in addressing more than one purpose at the same time. However, to allow the enlargement of a sentence of imprisonment solely[6] for the purpose of rehabilitation results in a judicial revision of congressional purpose found in 18 U.S.C. § 3582(a) and 28 U.S.C. § 994(k).

I would reverse and remand for re-sentencing consistent with the statutes.

---

omission of rehabilitative considerations for an upward departure is telling.

[6]I read the statutes to prohibit the incarceration decision or the length of sentence to be substantially influenced by rehabilitative or treatment considerations, but we need not reach that issue since the decision here was made solely for those reasons.