FILED
United States Court of Appeals
Tenth Circuit

**April 3, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DARIUS RAMON LIMON,

    Defendant-Appellant.

No. 07-1297
(D.Ct. No. 06-cr-00046-MSK)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TACHA**, Circuit Judge, and **BARRETT** and **BRORBY**, Senior Circuit
Judges.

_____

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Appellant Darius Ramon Limon pled guilty to three counts of armed bank

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

robbery, in violation of 18 U.S.C. § 2113(a) and (d), and one count of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). He now appeals his 279-month sentence, contending it is unreasonable because the district court impermissibly relied on his need for mental health treatment or "rehabilitation" to apply an upward variance for the purpose of increasing his sentence. Mr. Limon further claims his sentence is unreasonable because the district court improperly considered the 18 U.S.C. § 3553(a) sentencing factors previously contemplated in calculating his sentence under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm Mr. Limon's sentence.

## I. Factual Background

The facts concerning Mr. Limon's criminal activities are outlined in his plea agreement and statement of facts relevant to sentencing and incorporated into his presentence report, to which neither party objected. Only those facts relevant to disposition of the issues raised in this appeal are presented.

On February 2, 2005, Mr. Limon entered a Safeway Rocky Mountain Federal Credit Union (now Westerra Credit Union) in Denver, Colorado, where he pointed a long-barreled revolver at four credit union employees, ordered them

down on the ground, and directed them to open the vault. The manager opened the vault and placed $88,248 inside Mr. Limon's backpack, which he took and fled.

On September 9, 2005, Mr. Limon entered the Air Academy Federal Credit Union in Parker, Colorado, pointed a black semiautomatic handgun at ten individuals and then herded them into the vault area at gunpoint. Credit union employees opened the vault and put $139,775 inside Mr. Limon's backpack, which he took and fled. A few weeks later, on October 26, 2005, Mr. Limon entered the same bank again, located the employee who had the keys to the vault in the first robbery, ordered her to open it, pointed his gun at her and at least seven others during the robbery, and fled with $70,150.

On December 30, 2005, Mr. Limon entered Champion Bank in Parker, Colorado, pointed a black semiautomatic handgun at six individuals and herded them into the vault area at gunpoint. Again, bank employees opened the vault and placed $82,502 inside his backpack which Mr. Limon took and fled.

On February 7, 2006, Mr. Limon entered another Air Academy Federal Credit Union, this time located in Highlands Ranch, Colorado, where he pointed a black semiautomatic handgun at three credit union employees and herded them

into the vault area at gunpoint. Again, the employees opened the vault and placed $21,671 inside a gray backpack, which Mr. Limon took as he fled. However, they also placed a covert monitoring device with a GPS locator in his backpack.

Approximately fifteen minutes after the robbery, a lieutenant with the Douglas County Sheriff's Office, Jason Kennedy, was patrolling an area eight miles from the Air Academy Federal Credit Union when a dispatch notified him the vehicle containing the monitoring device was stationary at the same intersection. At that time, Lieutenant Kennedy observed a vehicle matching the description of the vehicle used in the other robberies at the stop light. Lieutenant Kennedy initiated a stop of the vehicle and arrested Mr. Limon; inside the vehicle in plain view was the gray backpack with money spilling out of it, the same gray sweatshirt worn by Mr. Limon during the robbery, and the black semiautomatic handgun he brandished during all but one of these robberies, which authorities later determined was operable.

The money and deposits taken by Mr. Limon during these robberies were insured by either the National Credit Union Administration or the Federal Deposit Insurance Corporation – both agencies of the United States government. In addition to the five robberies described, Mr. Limon later agreed to pay restitution for five additional robberies committed over a twenty-eight-month period, which

included the following: $59,240 for a robbery on October 23, 2003, at Columbine Federal Credit Union in Centennial, Colorado; $77,000 and $9,847 for robberies on May 3, 2005, and July 27, 2005, at Liberty Savings Bank in Greenwood Village, Colorado; $13,895 for a robbery on July 28, 2005, at Colorado State Employees Credit Union in Aurora, Colorado; and $24,300 for a robbery on August 30, 2005, at the Public Service Credit Union in Centennial, Colorado. The total amount of restitution Mr. Limon agreed to pay as a result of all ten robberies totaled $586,628.

## II. Procedural Background

Following Mr. Limon's arrest, a twenty-count superceding indictment was filed charging Mr. Limon with ten counts of armed back robbery, in violation of 18 U.S.C. § 2113(a) and (d), and ten counts of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Mr. Limon entered a guilty plea to three counts of armed bank robbery pertaining to the Safeway Rocky Mountain Federal Credit Union in Denver, Colorado, committed on February 2, 2005 (Count 3); the Air Academy Federal Credit Union in Parker, Colorado, committed on September 9, 2005 (Count 13); and the Champion Bank in Parker, Colorado, committed on December 30, 2005 (Count 17). He also pled guilty to one count of brandishing a firearm during and in relation to a crime of violence pertaining to his robbery of the Air Academy Federal Credit Union in

Highlands Ranch, Colorado, on February 7, 2006 (Count 20). In exchange for his guilty plea and agreement to pay restitution for all ten robbery counts, the government agreed to dismiss the remaining counts and file a motion for downward departure if Mr. Limon provided substantial assistance.

After the district court accepted Mr. Limon's guilty plea, a probation officer prepared a presentence report in which she calculated Mr. Limon's base offense level at 20 for each of the three armed robberies to which he pled guilty. Based on various adjustments for specific offense characteristics, multiple counts, and acceptance of responsibility, the probation officer calculated Mr. Limon's total offense level at 31 for the robbery offenses. The total offense level of 31 included various offense level increases under U.S.S.G. § 2B3.1, including a two-level increase under subsection (b)(1) because the properties robbed belonged to financial institutions; a five-level increase under subsection (b)(2)(C) because Mr. Limon brandished a firearm during each of the three robberies; a two-level increase under subsection (b)(4)(B) because individuals at each of the three banks were physically restrained at gun-point; and a two-level increase under subsection (b)(7)(C) because each of the three robbery offenses caused a loss of more than $50,000 but less than $250,000. Based on Mr. Limon's extensive criminal history, the probation officer calculated his criminal history category at VI, which, together with a total offense level of 31, resulted in a Guidelines range of

188 to 235 months imprisonment for the armed robbery counts. The probation officer also noted the separate count for brandishing a firearm during and in relation to a crime of violence carried a minimum term of imprisonment of seven years, to be served consecutively to his armed robbery sentence, so that the Guidelines range for the firearm charge was the seven-year term of imprisonment set by statute, or eighty-four months.

The presentence report also provided information on Mr. Limon's history of depression and diagnosis of bipolar disorder, medications prescribed to assist with his mental problems, his failure to continue to take such medications, his positive response to medication while incarcerated, and his long history of substance abuse and self-medication with illegal drugs and alcohol. It also outlined his history of high stakes gambling which started in 2001 and steadily increased prior to his arrest. The report also noted that in relation to the counts to which he pled guilty, Mr. Limon entered the banking facilities with a gun and forced individuals into the vaults, pointing the gun at them as he shouted commands, causing fear and emotional distress, which was greatly increased by a second robbery at the Air Academy Federal Credit Union involving some of the same victims as the first robbery at that location. The presentence report recounted interviews with victims of the robberies, including both bank employees and customers, who discussed the extremely threatening and agitated

manner in which Mr. Limon committed the robberies and the physical, emotional, and mental distress and traumatic impact the robberies had on them.

The presentence report also discussed Mr. Limon's extensive criminal history, beginning at the age of sixteen, which included five previous felony convictions, including convictions for theft, forgery, and criminal impersonation, and five misdemeanor convictions, including a conviction for unlawful carrying of a concealed weapon, and the fact Mr. Limon: 1) was on parole at the time he committed the first alleged count of armed bank robbery; 2) committed the second charged armed bank robbery within six months of his discharge from the Colorado Department of Corrections; 3) was on probation for two felony offenses at the time of the remaining eight counts of armed bank robbery; and 4) had a five-year suspended Department of Corrections sentence pending in state court.

After discussing this information in conjunction with the 18 U.S.C. § 3553(a) sentencing factors, the probation officer recommended a sentence at the high end of the Guidelines range for the robbery counts at 235 months imprisonment, which, together with the statutory consecutive sentence of eighty-four months on the firearm count, resulted in a recommended total imprisonment of 319 months. As justification for a recommendation of a sentence at the high end of the Guidelines sentencing range, the probation officer pointed out: 1) Mr.

Limon had an extensive criminal history with his criminal activity becoming progressively more serious and violent in nature; 2) his prior period of incarceration, parole, and probation did not deter him from committing the instant offenses, which he committed while on supervision; 3) attempts to address his substance abuse and mental health conditions by the Colorado Department of Corrections, through community referrals while on parole and probation, had been unsuccessful; 4) his admission he chose discontinuation of prescribed medication for his mental health condition and instead self-medicated with drugs and alcohol; 5) the fact Mr. Limon was on probation for two felony offenses at the time of the instant offense and had been afforded numerous opportunities for rehabilitation, and yet his criminal behavior continued and escalated; and 6) the fact his bank robbery spree had a detrimental and lasting effect on the numerous victims impacted by his crimes, including those who were victimized twice by him within a two-month period at the same location, and potentially more than the twenty-six victims identified in the plea agreement.

As agreed, the government filed a motion for a downward departure for Mr. Limon's substantial assistance, requesting a total imprisonment of 240 months on all counts. Neither Mr. Limon nor the government filed objections to the presentence report; in addition, at the initial sentencing hearing, neither party disputed the facts set forth in the presentence report or the advisory Guidelines

calculations. At the sentencing hearing, a brief colloquy ensued over the government's basis for a downward departure for Mr. Limon's substantial assistance, as well as Mr. Limon's request for a more significant departure or variant sentence of eighteen years, or 216 months, imprisonment on all counts based on his mental health condition, to which the government objected.

After recounting Mr. Limon's extensive criminal history, including those offenses for which he received no criminal history points, and his substantial assistance to the government, the court granted the government's motion for downward departure but stated its intention to sentence Mr. Limon to 279 months imprisonment, which it stated constituted an upward variance above the downward departure of 240 months imprisonment. The district court also thoroughly discussed the various sentencing factors under 18 U.S.C. § 3553(a), including Mr. Limon's history and characteristics, as evidenced, in part, by its discussion of: 1) Mr. Limon's criminal history reflecting "numerous convictions, accelerating violence, numerous attempts by courts to intervene and to address his mental health and substance abuse issues"; 2) Mr. Limon's traumatic childhood; 3) his diagnosis of mental health problems; 4) his family's and law enforcement's attempts "to intervene to address those issues and to circumvent what became an accelerating history of self-medication with alcohol and drugs, resulting in an extensive, increasingly violent criminal history"; 5) the "troubling" and

"horrifying" circumstances surrounding the robberies, where Mr. Limon used a gun to point "at innocent people in a threatening and coercive way" and shouted commands which left them "weeping on the floor" and memories they will live with for the rest of their lives; 6) the possibility he experienced fits of mania in committing his instant offenses and may not have a clear recollection of what he did; 7) his robbery of the same bank within two months and other armed robberies in the indictment, which, with the other robberies, were committed between 2003 and 2006; 8) the fact he has five felony convictions and his prior periods of incarceration, parole, and probation did not deter him; 9) his history of substance abuse and mental health conditions and his decision to discontinue prescribed medication for his mental health conditions and self-medicate with drugs and alcohol; 10) the fact that despite his numerous opportunities for rehabilitation in the community, his criminal behavior not only continued, but escalated; 11) the fact that the only way Mr. Limon can receive and is amenable to the mental health treatment he needs is under supervision while incarcerated; 12) the fact that his failure to take medication and self-medicate affects the safety of the community; and 13) the extraordinary seriousness of the offense, which the district court described as a rampage. It then stated that while the government's view a twenty-year sentence would meet the punitive aspect in his sentencing and it would appear to meet the purpose of deterring criminal conduct:

> [w]hen we get to protecting the public from further crimes by the defendant, I don't think 20 years is enough because I do not believe that Mr. Limon yet understands that he is accountable for his behavior notwithstanding his horrible childhood [and] ... mental health issues. This isn't about him; it's about everybody else. And I further am concerned when I consider what Mr. Limon needs that it is only in a prison setting that his mental health can be appropriately dealt with.

R., Vol. 3 at 37-38. The district court then continued the sentencing hearing and allowed further briefing by the parties.

Mr. Limon filed a sentencing memorandum, asserting the Guidelines adequately took into account the facts relevant to his sentence and that a 240-month sentence would satisfy the § 3553(a) sentencing factors. At the subsequent sentencing hearing, Mr. Limon renewed these assertions, and the government continued to support its request for a 240-month sentence.

In sentencing Mr. Limon, the district court explained the sentencing range for the three counts of armed robbery was 188 to 235 months, which, together with the eighty-four-month consecutive sentence for the one count of brandishing, resulted in a total Guidelines range of 272 to 319 months imprisonment. It then explained that in the absence of Mr. Limon's substantial assistance to the government and its grant of a downward departure, it would have imposed a sentence at the top of the Guidelines range based on the "horrendous" nature of

-12-

Mr. Limon's robbery spree, the impact of that spree on the victims, protection of the public from future crime sprees based on his inability to regulate his mental health and behavior outside of prison, and his need for treatment. It then addressed the variance component of Mr. Limon's sentence, explaining it did not believe a 240-month sentence, based on the granted downward departure, would satisfy the § 3553(a) factors relating to the safety of the community and provision of medical care for Mr. Limon, and that, instead, a sentence within the advisory Guidelines period of incarceration was appropriate when considering the seriousness of the offenses, the effect the crimes had on the victims, the likely danger to the community, and the necessity of treatment for Mr. Limon. The district court then sentenced Mr. Limon to a total of 279 months imprisonment.

## III. Discussion

On appeal, Mr. Limon argues his sentence is substantively unreasonable because the district court impermissibly relied on his need for mental health treatment or rehabilitation to impose a variance, making his sentence longer than the 240-month downward departure sentence it initially granted. In making this argument, Mr. Limon relies on 18 U.S.C. § 3582(a), 28 U.S.C. § 994(k), U.S.S.G. § 5H1.3, and cases from other circuits to argue the district court could not consider his need for mental health treatment or rehabilitation to impose an upward variance.

Mr. Limon further suggests his sentence is substantively unreasonable because the district court considered sentencing factors under § 3553(a) already contemplated in calculating his sentence under the Guidelines. In support, he argues the Guidelines, through offense level increases under U.S.S.G. § 2B3.1, already took into account facts which increased his Guidelines range, including his use of a gun to rob financial institutions by force, which he pointed at innocent people in a threatening and coercive way. Similarly, he also suggests the district court should not have considered his extensive criminal history as a factor under § 3553(a) because it was previously assessed at the highest criminal history category VI under the Guidelines and did not constitute a criminal history that is "out of the ordinary" for a defendant with the highest criminal history category. Finally, Mr. Limon points out the district court discussed, as an alternative rationale, the sentence it would have imposed if it had denied the downward departure, so that to the extent it may have denied the downward departure rather than granting it, he argues his sentence is procedurally unreasonable and this court may review the district court's discretionary decision to deny the government's motion for downward departure.

The government opposes the appeal. While it admits the district court discussed an alternative sentencing methodology, it points out that it ultimately granted the downward departure, followed by an upward variance after

considering the § 3553(a) sentencing factors. It further contends Mr. Limon's argument improperly conflates "rehabilitation" with "medical care." It points out the statute on which Mr. Limon relies to support his argument, 18 U.S.C. § 3582(a), only prohibits imprisonment "as a means of promoting correction and rehabilitation," while 18 U.S.C. § 3553(a)(2)(d), on which the district court relied, requires the court to consider providing "the defendant with needed ... medical care" in assessing the sentence length. Thus, the government argues that while a court may not consider rehabilitative goals in considering whether to impose a sentence of imprisonment, it may consider rehabilitative needs relevant to the sentence length after it chooses imprisonment as a proper punishment. To this end, the government points out no question existed as to whether Mr. Limon would receive a substantial sentence in this case, so it was appropriate for the district court to consider his undisputed need for extensive mental health treatment as one of the factors in determining the length of his sentence.

The government also points out Mr. Limon's mental health treatment was not the only factor the district court considered in imposing his sentence but it also considered other factors, such as the extreme seriousness of his offenses and the need to protect the public from future crime sprees, and that in considering his mental health, the district court was concerned with the fact Mr. Limon had prior opportunities to receive treatment and did not take advantage of them, which

resulted in his criminal activities becoming more numerous and more violent, establishing a trend of increasingly serious offenses impacting the safety of the community. In addition, the government contends Mr. Limon's argument suggesting the district court impermissibly imposed a variant sentence based on factors previously accounted for in the Guidelines lacks merit, and, instead, his increasingly violent behavior – despite his repeated arrests, convictions, and imprisonment – takes him outside of the heartland of cases because he poses a higher risk than the average person and requires more deterrence than the Guidelines' basic computations.

We begin our discussion by clarifying that a sentence above or below the recommended Guidelines range based on an application of Chapters Four or Five of the Guidelines is referred to as a "departure," while a sentence above or below the recommended Guidelines range through application of the sentencing factors in 18 U.S.C. § 3553(a) is called a "variance." *United States v. Atencio*, 476 F.3d 1099, 1101 & n.1 (10th Cir. 2007). In this case, the district court clearly granted the government's downward departure, as indicated by its explicit announcement it was granting the government's motion for downward departure but intended to sentence Mr. Limon to 279 months imprisonment, which it stated constituted an upward variance from the 240-month imprisonment requested. Because the district court clearly granted the downward departure, we decline to address Mr.

Limon's alternative argument the district court may have somehow improperly denied the government's request for a downward departure simply because it discussed, but did not apply, a different sentencing methodology.

Having made this determination, we next consider the challenged upward variance imposed by the district court, which Mr. Limon states resulted in a "substantively" unreasonable sentence based on: 1) consideration of an impermissible factor – his mental health treatment; and 2) § 3553(a) factors already considered in calculating his Guidelines range, including his extensive criminal history.

Before beginning our discussion, we note that in briefing this appeal neither party had the benefit of this court's decision in *United States v. Smart*, which now clarifies the standard of review and principles applied in reviewing a variance imposed using the § 3553(a) factors. *See* ___ F.3d ___, 2008 WL 570804 (10th Cir. Mar. 4, 2008) (No. 06-6120) (slip op.). Following the Supreme Court's decisions in *Gall v. United States*, ___ U.S. ___, 128 S. Ct. 586 (2007), and *Kimbrough v. United States*, ___ U.S. ___, 128 S. Ct. 558 (2007), the *Smart* court clarified that "we now review 'all sentences – whether inside, just outside, or significantly outside the Guidelines range – under a deferential abuse-of-discretion standard.'" 2008 WL 570804, at *4 (quoting *Gall*, 123 S. Ct. at 591).

-17-

It also explained the mathematical formula in calculating the absolute amount and the relative percentage of a variance, as employed by this court in *United States v. Garcia-Lara*, 499 F.3d 1133, 1138-39 (10th Cir. 2007), *petition for cert. filed* (Mar. 7, 2008) (No. 07-9799), and other variant sentencing cases, no longer applies. *See Smart*, 2008 WL 570804, at **5-6. As a result, the district court need not necessarily provide "extraordinary" facts to justify any statutorily permissible sentencing variance, although it must provide reasoning sufficient to support a chosen variance. *Id.* at *6. In variant sentencing cases, we defer not only to a district court's factual findings but also to its determination of the weight to be afforded to such findings, giving "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* at **6-7 (quotation marks and citations omitted). The *Smart* court also noted the Supreme Court decisions in *Gall* and *Kimbrough* ended our practice of permitting a variance only if the district court "first distinguishes the defendant's characteristics and history from those of the ordinary ... offender" contemplated by the Guidelines. *Id.* at *7 (quotation marks and citation omitted). Because the recommended advisory Guidelines sentencing range only reflects a rough approximation of a sentence achieving § 3553(a) objectives, and the Guidelines are only a starting point for district courts, which have greater familiarity with the individual case and defendant before them, we announced, "district courts are now allowed to contextually evaluate each § 3553(a) factor,

-18-

including those factors the relevant guidelines already purport to take into account, even if the facts of the case are less than extraordinary." *Id.* As further stated in *Smart*, "[i]f district courts are required to balance the Guidelines against the other § 3553(a) considerations, then we cannot say they disregard the Guidelines simply by striking a different balance and imposing a variance in a particular case." *Id.* at *8.

Under *Smart*, district courts are free to impose any sentence that is "reasonable" under the sentencing factors listed in § 3553(a). *Id.* at *2. "Our appellate review for reasonableness includes both a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." *Id.* We have held a procedural error includes a sentence based on a factor not included in the categories set forth in § 3553(a), so that "[s]ection 3553(a) mandates consideration of its enumerated factors, and implicitly forbids consideration of factors outside its scope." *Id.* at *3. On the other hand, "[a] challenge to the sufficiency of the § 3553(a) justifications relied on by the district court implicates the substantive reasonableness of the resulting sentence." *Id.* Based on these criteria, we examine Mr. Limon's claim the district court impermissibly considered his mental health treatment as a factor under § 3553(a) as both a procedural and substantive challenge. We consider whether the need for

-19-

mental health treatment is a permissible factor to consider under § 3553(a) for the purpose of conducting a procedural reasonableness analysis and the separate question of whether the need for such treatment justifies a sentencing variance under a substantive reasonableness analysis. *See id.* at *3.

We first proceed to the procedural reasonableness analysis concerning Mr. Limon's sentence. As the government points out, § 3553(a) explicitly provides "the court ... shall consider ... the need for the sentence imposed ... to provide the defendant with needed ... medical care ...." 18 U.S.C. § 3553(a)(2)(D). In *United States v. Gay*, we held the district court, in imposing a variance under the § 3553(a) factors, properly considered the defendant's mental health disorders and diagnosis, efforts to seek treatment, and response to treatment. 509 F.3d 1334, 1336-37 (10th Cir. 2007). Thus, the need for medical treatment is a factor explicitly enumerated in § 3553(a)(2)(D), and, despite Mr. Limon's contentions otherwise, it is a factor the district court must consider under a § 3553(a) procedural reasonableness analysis.

In making this determination, we reject Mr. Limon's claim U.S.S.G. § 5H1.3 prohibits consideration of Mr. Limon's health care and treatment under § 3553(a). Section 5H1.3 of the Guidelines is advisory and states "[m]ental and emotional conditions *are not ordinarily relevant* in determining *whether a*

-20-

*departure is warranted ....*"  *See* U.S.S.G. § 5H1.3 (emphasis added).

Consequently, § 5H1.3 clearly applies to departures and not to a variance under 18 U.S.C. § 3553(a), which is at issue here.  *See, e.g., United States v. Neal*, 249 F.3d 1251, 1255-57 & n.4 (10th Cir. 2001) (explaining discouraged factors listed in subpart 5H1 of the Guidelines apply to "departures").  As a result, the cases from other circuit courts on which Mr. Limon relies in support of his § 5H1.3 argument involving departures are not particularly instructive.  *See United States v. Fonner*, 920 F.2d 1330 (7th Cir. 1990); *United States v. Doering*, 909 F.2d 392 (9th Cir. 1990).


Having determined § 5H1.3 is not applicable to our analysis in this case, we turn to the statutes on which Mr. Limon relies in arguing his mental health treatment cannot be considered in determining his sentence length under § 3553(a).  18 U.S.C. § 3582 states, in part:

> **(a) Factors to be considered in imposing a term of imprisonment.**
> – The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.*

18 U.S.C. § 3582(a) (emphasis added).  The other statute, 28 U.S.C. § 994(k), states, in part: "The [Sentencing] Commission shall insure that the guidelines reflect the *inappropriateness of imposing a sentence to a term of imprisonment*

*for the purpose of rehabilitating the defendant or providing the defendant with*

*needed* educational or vocational training, *medical care*, or other correctional

treatment." 28 U.S.C. § 994(k) (emphasis added).

In *United States v. Tsosie*, we examined these statutes in conjunction with a

district court's decision to sentence a defendant above the Guidelines range for

the sole purpose of allowing him to participate in a federal substance abuse

program after violating his supervised release. *See* 376 F.3d 1210, 1212-13 (10th

Cir. 2004). In construing these statutes, we held "Congress intended the

limitations imposed by 18 U.S.C. § 3582(a) and 28 U.S.C. § 994(k) to apply only

when a court is initially 'imposing a sentence to a term of imprisonment' for the

crime committed," and that § 3582(a) "clarif[ies] that it is inappropriate to impose

a sentence to a term of imprisonment *solely* for rehabilitative purposes or

correctional treatment." 376 F.3d at 1215. While this court concluded it was

inappropriate to impose a term of imprisonment during the initial sentencing for

the sole purpose of rehabilitation, we held such a prohibition did not apply to

sentences following revocations of supervised release. *See id.* at 1215, 1217.

We find *Tsosie* instructive in this case with respect to its clarification that a

term of imprisonment *solely* for rehabilitative purposes is inappropriate during

initial sentencing. *See* 376 F.3d at 1215. Here, it is evident the district court did

not impose the upward variance solely for Mr. Limon's mental health treatment or rehabilitative purposes, but in conjunction with numerous other 18 U.S.C. § 3553(a) sentencing factors, so that the prohibitions in 18 U.S.C. § 3582(a) and 28 U.S.C. § 994(k) are not readily implicated.

Our conclusion is not changed by the other circuit court cases on which Mr. Limon relies. In *United States v. Manzella*, the Third Circuit held § 3582(a) prevented the district court from sentencing the defendant to incarceration "for the sole purpose of rehabilitation." *See* 475 F.3d 152, 153, 155-56, 159, 161 (3d Cir. 2007) (vacating and remanding for resentencing defendant's thirty-month sentence which the district court imposed solely because it believed such a term was necessary for eligibility in a federal correctional drug treatment program). Similarly, in *United States v. Harris*, the Eleventh Circuit held the district court inappropriately extended the defendant's term of imprisonment for the purpose of providing him with rehabilitative treatment. *See* 990 F.2d 594, 595-97 (11th Cir. 1993) (vacating and remanding for resentencing defendant's sentence which the district court imposed consecutive, rather than concurrent, to state sentence for purpose of serving enough time to undergo full drug treatment program).

As Mr. Limon contends, in making these determinations, the Third and Eleventh Circuits both held § 3582(a) prohibits district courts from considering

rehabilitation needs in either imposing incarceration or determining the length of that incarceration. *See Manzella*, 475 F.3d at 159-61; *Harris*, 990 F.2d at 597. On the other hand, as the government contends, other circuit courts have held the prohibition in § 3582(a) only applies to decisions on whether to impose incarceration, but not in determining the length of a sentence.[1] But even if we relied on the circuit court cases on which Mr. Limon relies, it appears their blanket prohibition as to considering the defendant's rehabilitation needs applied only because it was the sole reason for the sentencing decision.

Consequently, even if we used the same reasoning here, the result would be the same because the district court did not base the upward variance *solely* on Mr. Limon's need for such treatment. Instead, as the government points out, it considered his need for such treatment in conjunction with his danger to the community based on the escalation of his criminal activities which became more numerous and violent, resulting in extraordinarily serious offenses. These are

---

[1] *See United States v. Hawk Wing*, 433 F.3d 622, 630 (8th Cir. 2006) (holding it is permissible to consider the § 3553(a)(2)(D) factor of rehabilitation in deciding the appropriate length of sentence after determining the defendant would receive a term of imprisonment); *United States v. Duran*, 37 F.3d 557, 561 (9th Cir. 1994) (concluding that "[o]nce imprisonment is chosen as a punishment ... § 3582 does not prohibit consideration of correction and rehabilitation in determining the length of imprisonment"); *United States v. Maier*, 975 F.2d 944, 946-47 (2d Cir. 1992) (noting that while imprisonment cannot be a means of promoting rehabilitation, it is an objective of sentencing because trial judges must consider, among other things, providing the defendant with needed medical care).

enumerated factors under § 3553(a) which the district court must consider, and which, in this case, the district court explained were connected, in part, with Mr. Limon's prior neglect in seeking mental health treatment and taking prescribed medication and acts of medicating himself with drugs and alcohol.

Having determined, for the purpose of conducting our procedural reasonableness analysis, that the district court properly considered Mr. Limon's need for medical care and treatment, we turn to our substantive reasonableness analysis. In so doing, we consider whether Mr. Limon's need for mental health treatment, together with the other factors on which the district court relied, justified a variance. *See Smart*, 2008 WL 570804, at *3. In applying our deferential abuse of discretion review outlined in *Smart*, we recognize the district court in this case did not need to necessarily provide "extraordinary" facts to justify the upward sentencing variance, but needed only to provide reasoning sufficient to support the chosen variance. *See id.* at *6. We believe it met that standard when it carefully considered the § 3553(a) factors and thoroughly delineated those it believed warranted the upward variance. In this regard, we defer not only to the district court's factual findings in this case, but also to its determination of the weight to be afforded to such findings. *Id.* at *7. With specific regard to Mr. Limon's mental health treatment, we again note it was not the sole factor the district court considered in determining a variance was

-25-

warranted, but it was certainly one of the factors justifying the variance for the reasons set forth by the district court.

We next turn to Mr. Limon's argument his sentence is unreasonable because the district court considered § 3553(a) factors already contemplated in calculating his sentence under the Guidelines. In making this claim, he contends the Guidelines already took into account: 1) his extensive criminal history which was not "out of the ordinary" for someone with the highest criminal history category; and 2) various Guidelines factors in § 2B3.1 which increased his offense level calculations based on his using or brandishing a gun in a violent or threatening way when he forced individuals into the bank vaults.

While the Guidelines may have taken some of these factors into account, including Mr. Limon's criminal history and certain facts relating to his commission of the armed robberies, for the purpose of increasing his offense level, the Guidelines are only advisory, reflecting "a rough approximation" of the sentence necessary for achieving § 3553(a) objectives. *See Smart*, 2008 WL 570804, at *7. As stated in *Smart*, the district court could contextually evaluate each § 3553(a) factor, including those factors the relevant Guidelines already purport to take in to account, regardless of whether the facts involved were less than extraordinary. *Id.* As previously indicated, the facts presented in this case

are sufficient to justify the contested variance. Indeed, they are arguably "extraordinary" based on the number of robberies committed, the substantial number of victims affected, and Mr. Limon's increasingly violent conduct and escalating criminal behavior, as evidenced by a pattern or repetition of armed robberies while on supervised release and despite his repeated prior arrests, convictions, and imprisonment. Thus, we cannot say the district court abused its discretion in considering the § 3553(a) factors Mr. Limon suggests were already taken into consideration by the Guidelines.

Finally, based on our holding in *Smart*, we also reject Mr. Limon's argument his sentence is unreasonable because his criminal history was not "out of the ordinary" for a defendant with the highest criminal history category. After *Smart*, we no longer require district courts to "first distinguish the defendant's characteristics and history from those of the ordinary ... offender contemplated by the Guidelines." *Id.* (quotation marks, citation, and alteration omitted). Even if we did apply our old standard, our conclusion would be the same, given Mr. Limon's armed robbery spree and the other factors outlined by the district court clearly took him out of the "ordinary offender" category we previously applied. Thus, it is clear the district court did not abuse its deferential standard in imposing the contested upward variance.

IV.  Conclusion

For these reasons, we **AFFIRM** Mr. Limon's sentence.


**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge