**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 1, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ROBERT B. SULLIVAN,

      Defendant - Appellant.

No. 10-1201

(D. Colorado)

(D.C. No. 03-CR-00210-MSK-1)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **BALDOCK**, and **BRORBY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Following his conviction as a felon in possession of a firearm, defendant and appellant Robert B. Sullivan was sentenced to three years of supervised release. His supervised release was revoked following a number of violations of

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the terms of his release, and he was sentenced to eighteen months' imprisonment. Arguing that the eighteen-month sentence is procedurally and substantively unreasonable, Mr. Sullivan appeals that sentence. We affirm.

**BACKGROUND**

As indicated, Mr. Sullivan was convicted in 2003 of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and was sentenced to fifty-one months' imprisonment. After completing that sentence, Mr. Sullivan began his three years of supervised release on July 13, 2007. Among the conditions applicable to him during his supervised release were the requirements that he abstain from the use of alcohol or other intoxicants and that he participate in a drug abuse testing and treatment program, as well as a mental health treatment program.

Between November 10, 2007, and May 28, 2008, Mr. Sullivan tested positive twice for methamphetamine and once for marijuana usage. While he admitted the two methamphetamine uses, he denied using marijuana. Following the first two violations, his probation officer, Pete Stein, expanded Mr. Sullivan's drug treatment program, instead of seeking court intervention. After the third violation, however, Officer Stein recommended modifying the terms of Mr. Sullivan's supervised release. As a result, the district court placed Mr. Sullivan in a halfway house for five months. Officer Stein explained the

purpose of the modification was to "provide the defendant with the necessary structure while sanctioning him for his noncompliant conduct." Pet. for Modification of Conditions of Supervised Release at 2, R. Vol. 1 at 6.

Mr. Sullivan was released from the halfway house on September 30, 2008. On eight different occasions between October 2008 and January 2009, he refused to submit to drug testing as directed by his probation officer. On January 27, 2009, a summons was issued requiring Mr. Sullivan to appear at a supervised release violation hearing on February 26, 2009. Officer Stein reported that Mr. Sullivan was "unresponsive to efforts made by the probation officer to address this ongoing noncompliance." Pet. for Issuance of Summons Due to Violation of Supervised Release at 2, R. Vol. 1 at 8.

As a result of these violations, the district court held a hearing on February 26, 2009, at which Mr. Sullivan admitted to each of the charged violations. The district court deferred sentencing, ordering him to appear for final disposition on April 27, 2009. The court also assigned him a new probation officer, Andrea Bell, and ordered Mr. Sullivan to obtain mental health counseling. Mr. Sullivan obtained a mental health evaluation, following which no particular mental health treatment was recommended.

Before the April 27, 2009, hearing could take place, Mr. Sullivan tested positive twice for amphetamines, although no new charges derived from these

tests.[1]  The district court finally held its hearing on Mr. Sullivan's previously

admitted drug violations on May 1, 2009.  The court added two more conditions

to Mr. Sullivan's supervised release:  (1) placement in a halfway house for four

months and (2) a directive that he "shall not ingest marijuana for medical or other

purposes pending specific authorization by the court."  Order Continuing

Supervision and Modifying Conditions of Supervised Release at 1, R. Vol. 1 at

10.

After the hearing but before the halfway house placement, Officer Bell

learned that Mr. Sullivan had failed more drug tests, testing positive three times

for methamphetamine and twice for marijuana.  He admitted using both drugs,

and was placed in the halfway house.  No other consequence followed.

Mr. Sullivan was released from the halfway house on September 14, 2009.

On December 14, 2009, Officer Bell filed a Petition for Issuance of Summons

Due to Violation of Supervised Release, charging Mr. Sullivan with three

violations, and the district court directed him to appear at a supervised release

violation hearing on February 12, 2010.  Violations continued, and by the time of

the hearing, Mr. Sullivan had been charged with nine new violations.  The first

---

[1]Mr. Sullivan blamed the positive drug tests on his use of a Vicks inhaler. The government contends that, according to a laboratory, older versions of Vicks inhalers may have been capable of producing a false positive for amphetamine, but a second round of testing could distinguish between over-the-counter medications like Vicks and illegal methamphetamine.  In this case, however, no such second round of testing could be obtained because Mr. Sullivan had not provided a large enough urine sample.  Thus, no charges were filed.

-4-

charge was failure to follow the probation officer's instructions.[2]  The next two charges alleged Mr. Sullivan failed to comply with mandatory drug abuse treatment.  These charges were based on Mr. Sullivan's failure to appear for two scheduled counseling sessions in November and December of 2009.  Mr. Sullivan claimed that he overslept on one occasion and that there was a miscommunication regarding the time for the appointment on the other occasion.

The remaining six charges all alleged possession and use of prohibited controlled substances.  Specifically, on November 18, 2009, Mr. Sullivan submitted a urine sample that tested positive for marijuana.  He admitted using some marijuana, but justified it as a substitute for a prescription pain medication his doctor could no longer provide him.  While Mr. Sullivan admitted he knew he was supposed to get the court's permission before using any marijuana, he claimed he failed to do so out of a concern about disclosing his medical information to the court's electronic filing system.

Two of the six charges stemmed from urine samples provided by Mr. Sullivan in November and December 2009, both of which tested positive for

---

[2]This violation was based upon the fact that, at least for certain drug tests, Mr. Sullivan did not provide a sufficiently large sample of urine to allow for complete testing for drugs.  Officer Bell opined that she was concerned that Mr. Sullivan was "attempting to thwart the confirmation process by giving an insufficient sample."  Tr. of Hr'g on Pet. to Revoke Supervised Release, Vol. 1 at 13, R. Vol. 2 at 16.  Officer Bell told Mr. Sullivan to provide at least a half bottle of urine at each submission.  He apparently failed to do so on certain occasions.  Thus, his October 28, 2009, urine sample tested positive for amphetamines, but it could not be confirmed.

amphetamine. A second round of testing confirmed that the substance was D-methamphetamine, which eliminated the possibility that the result was a false positive based on Mr. Sullivan's claimed use of a Vicks inhaler or Adderall, a medication for attention deficit hyperactivity disorder ("ADHD") which Mr. Sullivan claimed to have used. Additionally, the testing laboratory confirmed that none of the medications Mr. Sullivan was taking could have produced the results which occurred. Mr. Sullivan denied using an illegal drug, but that denial was refuted by the evidence.[3]

Mr. Sullivan also tested positive for methamphetamine on three more occasions—two in December 2009 and one in January 2010. One of the tests also reflected marijuana use. The testing laboratory confirmed twice that all three results were positive for D-methamphetamine.

While Officer Bell had initially sought a summons to bring Mr. Sullivan to court to account for his supervised release violations (the December 14, 2009 summons), on January 13, 2010, she sought a Petition for Issuance of Arrest Warrant Due to Additional Violations of Supervised Release. An arrest warrant was issued that day, following which Mr. Sullivan turned himself in.

[3]Mr. Sullivan initially claimed to have taken Desoxyn, a prescription form of methamphetamine. Upon further questioning at the supervised revocation hearing, Mr. Sullivan admitted that he had not taken Desoxyn during the testing periods, nor did he have a prescription for the medication. While he later attempted to clarify that perhaps he had taken it in October, the laboratory confirmed that Desoxyn usage in October would not have affected his late November or December tests.

Following a series of continuances, the supervised release violation hearing was eventually held on April 23 and 26, 2010. Mr. Sullivan retracted his previous admissions and denied everything except missing one drug treatment appointment. He more specifically claimed that Desoxyn, not illegal methamphetamine, was responsible for his many failed drug tests, despite his prior statements to the contrary. The government agreed with the probation department's recommendation that Mr. Sullivan receive an eighteen-month sentence.

After receiving evidence, the district court found him guilty of six of the nine charged violations. Noting that the burden on the government to prove the violations was a preponderance of the evidence, the court found that "the evidence does not establish the failure to follow the instructions of the probation officer under the preponderance of the evidence standard." Tr. of Hr'g on Pet. to Revoke Supervised Release, Vol. 2, at 34, R. Vol. 2 at 109. The court also rejected the violations claiming a failure to comply with drug treatment, stating, "[A]pplying the preponderance of the evidence standard, there is no doubt that he missed, there is no doubt that he was called the day before; but there is nothing to rebut his testimony that he overslept or there was a miscommunication. Therefore, I find that those are not violations." Id. at 35.

All the remaining allegations involved the use of prohibited substances, based on urine tests. In finding those violations established, the court stated:

Frankly, after having reviewed the entire history here, having listened to Mr. Sullivan's statements about his drug use, his drug sources, the explanations for why the tests are positive, I find his testimony incredible. I find that with regard to all of the allegations with regard to drug use that by a preponderance of the evidence he has violated the terms and conditions of his supervision.

These are Class C violations; and by statute, the violations would require me to revoke his supervised release unless I can find that some treatment program would address the concerns.

Frankly, we've tried. This court has tried everything it can think of. It has switched probation officers. It's tried residential halfway houses twice. It's tried mental health counseling.

And this is not about Mr. Sullivan's good skills as a welder, his employability. This is about following the rules and about telling the truth. And he does neither.

This is about what will keep him from using drugs. And it is clear only supervision, direct, hands-on supervision keeps him from using drugs. When he's in the halfway house, he does pretty well. When he's not, he doesn't.

Id. at 36-37.

While the advisory sentence range under United States Sentencing Commission, Guidelines Manual ("USSG"), was six to twelve months, followed by another term of supervised release of no more than three years, the district court selected an eighteen-month sentence, with no additional supervised release. The court's explanation for this sentence, which was higher than the top level of the advisory sentencing range, was as follows:

[T]his sentence, like the sentence that is imposed at the time of conviction, has to satisfy the requirements of 18 U.S.C. Section 3553. That section requires me to impose a sentence that is

-8-

sufficient but not greater than necessary to accomplish these objectives: to reflect the seriousness of the offense, to promote . . . respect for law and provide just punishment, to adequately deter criminal conduct, to protect the public from further crimes by the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The nature and the circumstances of this repeated drug use, the inability of Probation and the Court to assist Mr. Sullivan in kicking his habit and getting on the straight road is unfortunate. But, we've reached the end of that road.

In order to promote respect for the law, in order to protect the public from further crimes by the defendant–and that includes simply buying illicit drugs–in order to prevent him from taking drugs that are not medically prescribed, the Court comes to the reluctant conclusion that the only solution is to re-incarcerate him. And I agree with the recommendation of an 18-month period of re-incarceration after revocation of supervised release and reluctantly conclude that no further supervised release would benefit Mr. Sullivan.

Id. at 38. Neither side registered any objection at the time to the sentence.

Mr. Sullivan appeals that sentence, arguing that it is procedurally and substantively unreasonable.

**DISCUSSION**

"Under 18 U.S.C. § 3583(e)(3), when a person violates a condition of his or her supervised release, the district court may revoke the term of supervised release and impose prison time." United States v. Kelley, 359 F.3d 1302, 1304 (10th Cir. 2004). "In imposing a sentence following revocation of supervised

release, a district court is required to consider both [the United States Sentencing Guidelines] Chapter 7's policy statements, as well as a number of the factors provided in 18 U.S.C. § 3553(a)." United States v. Cordova, 461 F.3d 1184, 1188 (10th Cir. 2006) (citation omitted). "[W]e will not reverse a [revocation sentence imposed by the district court] if it can be determined from the record to have been reasoned and reasonable." United States v. Tsosie, 376 F.3d 1210, 1218 (10th Cir. 2004) (quotation omitted).

Thus, we review a sentence imposed for violating the terms of a defendant's supervised release under the same reasonableness standard we now apply to all criminal sentences. We have called it the "familiar abuse-of-discretion standard of review." Gall v. United States, 552 U.S. 38, 46 (2007). "[W]e now review all sentences . . . whether inside, just outside, or significantly outside the Guidelines range[]under a deferential abuse-of-discretion standard." United States v. Smart, 518 F.3d 800, 805 (10th Cir. 2008) (quotation omitted).

Reasonableness review has a procedural and a substantive component. A court may commit procedural error in imposing a sentence by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Id. at 51. In performing substantive reasonableness review, we consider "whether the length of the sentence is reasonable given all the circumstances of the case in

-10-

light of the factors set forth in 18 U.S.C. § 3553(a)." United States v. Alapizco-Valenzuela, 546 F.3d 1208, 1215 (10th Cir. 2008) (quotation omitted).

## I. Procedural Reasonableness:

Mr. Sullivan claims the district court committed procedural error in sentencing him "by failing to explain its reasons for imposing a substantially-above-Guidelines sentence[.]" Appellant's Br. at 3. When a party fails to object contemporaneously to the district court's sentencing procedure, as Mr. Sullivan failed to do here, we "review procedural reasonableness challenges for plain error." United States v. Poe, 556 F.3d 1113, 1128 (10th Cir.), cert. denied, 130 S. Ct. 395 (2009). Under the plain error doctrine, we will reverse the district court's judgment only if the party shows (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Morris, 562 F.3d 1131, 1133 (10th Cir. 2009) (internal quotation marks omitted). "The plain error standard presents a heavy burden for an appellant, one which is not often satisfied." United States v. Romero, 491 F.3d 1173, 1178 (10th Cir. 2007).

A sentencing court must, of course, state the reasons for its imposition of a particular sentence. We have held, however, that a "district court need not 'march through § 3553(a)'s sentencing factors,' nor do we 'demand that the district court recite any magic words to show that it fulfilled its responsibility to

-11-

be mindful of the factors that Congress has instructed it to consider.'" United States v. Verdun-Garcia, 516 F.3d 884, 898 (10th Cir. 2008) (quoting United States v. Rines, 419 F.3d 1104, 1107 (10th Cir. 2005)).  When the district court imposes a sentence outside the advisory guidelines range, based upon "nonfrivolous reasons for imposing a different sentence, . . . the judge will normally go further and explain why he has [imposed an outside-the-guidelines sentence]."  Rita v. United States, 551 U.S. 338, 357 (2007); see also United States v. Pinson, 542 F.3d 822, 834 (10th Cir. 2008).

We agree with the government that the district court clearly explained the reasons for the above-guidelines-range sentence.  It noted that, despite repeated and varying efforts to keep Mr. Sullivan from using drugs while on supervised release, Mr. Sullivan appeared to only *successfully* stay drug-free when he was incarcerated and under close supervision.  The court had discovered, however, that the two shorter (four and five month) stints in halfway houses had been unsuccessful, so a significantly longer period of incarceration was required.  Additionally, as the court said to Mr. Sullivan, this sentence was about "following the rules" and "telling the truth," neither of which Mr. Sullivan appeared able to do reliably.  Thus, a longer sentence was in order.  We perceive the precise reasons why the district court imposed the eighteen-month sentence it did.

In addition, as the government points out, ordinarily another term of supervised release would be added to Mr. Sullivan's sentence.  But, the district

-12-

court relieved him of that obligation; thus, it is not correct to view the sentence imposed as strictly and only an upward variance.

Accordingly, the court did not err, let alone commit plain error, when it selected the sentence it chose.

**II. Substantive Reasonableness:**

A district court abuses its discretion under the substantive reasonableness standard "when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." United States v. Lewis, 594 F.3d 1270, 1277 (10th Cir.) (internal quotation omitted), cert. denied, 130 S. Ct. 3441 (2010). Mr. Sullivan concedes the sentence was neither arbitrary nor capricious nor whimsical. He claims it is "manifestly unreasonable." We disagree. Mr. Sullivan has displayed a rather remarkable inability to follow and abide by the terms and conditions of his supervised release. As the district court noted, his sentence is intended to promote his respect for the law and to protect the public from a chronic drug abuser. Given the sentencing factors under § 3553(a), we conclude that the eighteen-month sentence is reasonable.

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed in this case.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge